UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 10-90-GWU

TIM BRIAN PATTON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

    in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

 Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Tim Brian Patton, filed his current SSI application on June 9, 2008, alleging disability since February 1, 2008 due to depression and a bipolar disorder. (Tr. 133-7, 158).  After hearing the plaintiff's testimony and reviewing the evidence, Administrative Law Judge (ALJ) Algernon W. Tinsley determined that, although the plaintiff had "severe" impairments consisting of a mood disorder, "rule out" impulse control disorder, and an anti-social disorder, he retained the residual functional capacity to perform a significant number of jobs existing in the economy,

and therefore was not entitled to benefits. (Tr. 12-18). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked a Vocational Expert (VE) whether a person of the plaintiff's age of 30, ninth grade education with a history of Special Education classes, and lack of relevant work experience could perform any jobs if he were capable of performing at least medium level work, and would be able to perform, understand, remember, and carry out simple instructions in two-hour segments over an eight-hour day and relate adequately in a non-public, task-oriented setting, and was able to adapt to the changes and pressures of a routine work setting. (Tr. 52). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 53).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence. Procedurally, the evidence shows that the plaintiff had filed a previous SSI application which was denied in an ALJ decision of June 29, 2006. (Tr. 68-78). He had been found to suffer from a bipolar disorder and drug and alcohol abuse, but it was determined that he would not meet or equal a Listing if he stopped substance abuse, and that he could perform heavy exertion if he was limited to simple, routine work with infrequent public contact or changes in the work setting. (Tr. 70-3). Although the

plaintiff was not able to explain why his current onset date was February 1, 2008 (Tr. 37), he would not be eligible for SSI benefits prior to the date of his application, June 9, 2008.

Much of the evidence in the transcript consists of records from mental health treatment prior to the alleged onset date, although for historical purposes it can be noted that they show that Mr. Patton was hospitalized for mental episodes relating to drug and alcohol abuse on numerous occasions. (E.g., Tr. 248, 268, 288-9, 309). Progress notes from the Mountain Comprehensive Care Center from 2007, immediately prior to the period at issue, appear to be signed by a treating psychiatrist, Dr. Karen Pajari, and indicate that the plaintiff's mood was fairly stable, even when he ran out of medications. (Tr. 351-2). Office notes beginning in January, 2008, around the time of the alleged onset date, show that the plaintiff missed or canceled several appointments early in the year, and when he was seen by Dr. Pajari on April 18, 2008, she noted that he was sleeping and eating "OK," denied psychotic symptoms, and denied any side effects of medications other than weight gain. (Tr. 352-3). One of his medications was therefore discontinued, and on follow-up in July, Dr. Pajari noted no change in symptomology. (Tr. 353). He missed another appointment in October. (Tr. 397). He was said to be stable on medications in January and April, 2009, and denied drug use. (Tr. 436, 438).

Nevertheless, Dr. Pajari completed a Mental Medical Assessment Form on July 7, 2009 indicating that Mr. Patton had poor or no ability to deal with the public, deal with work stresses, understand, remember, and carry out detailed and complex job instructions, relate predictably in social situations, and demonstrate reliability. (Tr. 421-2). He also had a "seriously limited but not precluded" ability to follow work rules, relate to coworkers, interact with supervisors, function independently, maintain attention and concentration, understand, remember, and carry out simple instructions and behave in an emotionally stable manner. (Id.). Dr. Pajari cited "episodes of mania and depression" as grounds for the restrictions, but added "[a]lso uses drugs at times." (Tr. 421).

The ALJ rejected this assessment because it was not consistent with the doctor's treatment notes, and because the plaintiff had a history of drug dependence and non-compliance with medication. (Tr. 16).[1] The plaintiff objects to this finding, but it is clearly supported by substantial evidence. As far as can be determined from Dr. Pajari's office notes, the plaintiff's condition was stable. Moreover, the physician admitted that the plaintiff did have a problem with drug use,

---

[1] The ALJ referred to Dr. Pajari as "Dr. Pairey," a spelling given on the mental assessment form (Tr. 422), although counsel for the plaintiff later indicated that this was erroneous and the author was actually Dr. Pajari (Tr. 446). Although counsel for the plaintiff refers to "Dr. Pairey" in his brief, the court assumes that this was also an oversight, since it would not be to the plaintiff's benefit to claim that a non-treating source was the source of the assessment.

and under the provisions of Public Law 104-121 a finding of disability is precluded where drug or alcohol use is a material factor.

The plaintiff was psychiatrically hospitalized in June and September, 2009, and in both cases urine drug screens were positive for opiates, benzodiazepines and marijuana. (Tr. 452, 565, 573). His diagnoses included bipolar disorder and a hypomanic episode, but also included polysubstance dependence and a substance-induced psychotic disorder. (Tr. 453, 580). No permanent restrictions were provided.

Psychiatrist Wayne Edwards conducted a consultative mental status examination on August 30, 2008. Dr. Edwards apparently did not have any records to review, and the plaintiff asserted that he did not abuse drugs or alcohol. (Tr. 370-1). Dr. Edwards did elicit the information that the plaintiff's psychiatric medications helped, noted that he was pleasant and cooperative, and that he stated that he got along with family, neighbors, and friends, and managed to get along with former supervisors and coworkers "so-so." (Tr. 371-2). His attendance record was said to be "all right," but he did have difficulty sustaining attention to complete tasks at home. (Tr. 374). Dr. Edwards concluded that the plaintiff appeared to be able to perform simple, repetitive tasks, ask simple questions and ask for assistance, could follow one- or two-step simple commands, had concentration and persistence congruent with his level of education, and demonstrated an ability to adapt to

9

changes in day-to-day work settings. He gave a history of getting along with supervisors and peers, and appeared to work without supervision, but could benefit from supervised training. He could also benefit from a non-public setting, and had difficulty with mathematical tasks which might prevent him from being able to manage his own funds. (Tr. 375).

Non-examining state agency psychologists reviewed the evidence in September and November, 2008 and concluded that the plaintiff would have limitations consistent with the hypothetical question. (Tr. 393-5, 400-2).

The plaintiff alleges on appeal that the ALJ's decision was not supported by even the one-time examination by Dr. Edwards, but the ALJ specified a non-public setting. The psychiatrist had said that Mr. Patton could benefit from supervised training and might not be able to manage his own funds, but in addition to being couched in conditional terms, it is not clear that these factors were actually inconsistent with the hypothetical factors.

The plaintiff also asserts that the consultative examiner's opinion was not reliable since Dr. Edwards did not have evidence from the recent hospitalizations to review, but given that the hospitalizations involved drug use, a remand for consideration of the additional evidence would be superfluous. The plaintiff also asserts that he should have been found to meet or equal the Commissioner's Listing of Impairment (LOI) 12.03, for "schizophrenic paranoid and other psychotic

disorders." However, for reasons stated in the defendant's brief, the ALJ correctly found that none of the "B" criteria of LOI 12.03 were met. <u>Commissioner's Motion for Summary Judgment</u>, Docket Entry No. 12, at 8-9.

Additionally, the plaintiff asserts that there was no support for the ALJ's finding that he could do "median level work." However, there is absolutely no evidence of physical limitations in the medical evidence and Mr. Patton admitted that he had none at the administrative hearing. (Tr. 42). Consequently, this argument is without merit.

Finally, the plaintiff argues that the ALJ showed bias, as evidenced by the hearing transcript at Tr. 34-39, as well as by the fact that, according to the plaintiff's brief, ALJ Tinsley is now employed by the attorney who handled Mr. Patton's previous case. As the Commissioner points out, it is unclear how such employment, even if it were proven, would have motivated ALJ Tinsley to make a negative ruling. Second, a reading of the hearing transcript at Tr. 34-39 does not show clear bias, although it might demonstrate some impatience and sarcasm. The Sixth Circuit has noted in a recent unpublished decision that there is a presumption that judicial and quasi-judicial officers carry out their duties fairly and impartially, and it is the plaintiff's burden to prove otherwise. <u>Bailey v. Commissioner of Social Security</u>, 2011 WL 850334 (6th Cir. March 11, 2011) (citations omitted). The plaintiff has fallen far short of producing "convincing evidence that a risk of actual bias or pre-

judgment is present."  Navistar Int'l Transportation Corp. v. U.S. E.P.A., 941 F.2d 1339, 1360 (6th Cir. 1991), cited in Bailey.

The decision will be affirmed.

This the 15th day of June, 2011.

Signed By:

G. Wix Unthank

United States Senior Judge